## Helen Ann Smith, et al.

### v.

## Mary K. McGregor, et al.

Record No. 860517

January 13, 1989

Present: Carrico, C.J., Poff,* Compton, Stephenson, Russell, Thomas, and Whiting, JJ.

---

\* Justice Poff participated in the hearing and decision of this case prior to the effective date of his retirement on December 31, 1988.

*Malcolm G. Crawford* for appellants.

*H. David Natkin (Bernard J. Natkin; Natkin, Heslep & Natkin, P.C.*, on brief), for appellee Mary K. McGregor.

No briefs or arguments for appellees Clem & Co., Connie Loretta Caldwell, an Infant, Sharon Elizabeth Caldwell, an Infant, and Louise Smith Deacon Sweet.

COMPTON, J., delivered the opinion of the Court.

In this appeal arising from an effort to sell real property, we consider the viability and enforceability of the contract of purchase and the entitlement of the real estate agent to a commission, attorney's fees, and costs.

In 1980, appellants, who were some of the heirs of Waitman Stuart Deacon, deceased, decided to sell a tract of land in Rockbridge County in which they had an interest by virtue of their ancestor's will. These heirs (hereinafter, the Deacons) engaged appellee Clem & Co., Inc., a Staunton realtor, to find a purchaser. Donald Sheets, a Clem "sales associate," showed the property to appellee Mary K. McGregor of Goshen.

After negotiation on the price with the Deacons and McGregor, Sheets completed a printed form "Contract of Purchase" by filling in appropriate blanks with a typewriter and dating the document October 8, 1980. The sellers were identified as "Mrs. D. W. Deacon et als." The property was described as "200 Acres, more or less, located south of Lexington, near Collierstown on Route 611." The purchase price was $80,000 with the payment of $500 "Cash with this contract" and the balance to be paid "at closing upon delivery of deed." Settlement was to be on November 30, 1980 or, according to the printed form, "as soon thereafter as title can be examined and necessary documents prepared with allowance of a reasonable time for Seller to correct any title defects reported by the title examiner." The contract provided for a cash fee to the realtor of ten percent of the purchase price.

Sheets presented the unsigned contract to McGregor, who insisted upon inclusion of the following provisions: "Contract subject to purchaser obtaining financing at 13% interest by November 15, 1980, loan not to have more than one (1) point origination fee. Sellers must present a recent survey showing that property has 200 acres and right-of-ways." With the addition of the foregoing language, McGregor executed the contract. Thereafter, eight Deacon heirs signed the document. McGregor paid the required deposit of $500 to the realtor.

Sheets forwarded a copy of the contract to Eric L. Sisler, a Lexington attorney who had represented McGregor in other real estate transactions. McGregor retained him to examine the title to the subject property.

On October 24, 1980, after an appraisal of the property, the Federal Land Bank Association of Staunton notified McGregor of its commitment to lend her the sum of $60,000 for purchase of the

property with interest at the rate of 11 percent at the time of closing. The commitment provided, however, that the rate during the period of the loan would be variable.

On November 19, 1980, Sisler wrote Sheets and stated that he had talked with McGregor "yesterday" and that "she was unable to obtain the financing pursuant to the contingency in paragraph 9 of the contract and according[ly] she is not in a position to proceed any further." Sisler noted in the letter that his client was "interested" in discussing owner financing with the Deacons and that he would "be pleased" to discuss "the matter" further with Sheets "in the event the Deacons do wish to provide suitable financing."

On November 24, 1980, a surveyor reported that his examination of the tract in question showed that it contained only 190.923 acres. On December 1, Sisler wrote Sheets notifying him "that the survey had been prepared but was ten acres shy of the estimated acreage." Sisler further wrote: "We will have to make some adjustment in the price to reflect the lesser acreage."

On December 3, Sisler wrote Sheets that, as the result of information he had just received from one of the Deacons, it would be necessary "to institute a chancery suit to clear this title for sale," and that the Deacon heir "has authorized me to do so." Sisler had learned that two minor children had an interest in the property. In addition, Sisler had noticed another "problem" with the title. The will devised the tract to the widow of a deceased son of the testator "to have and use for as long as she remains a widow," and then to be divided equally among the Deacons, who were her children. Sisler believed this was not a life estate but was "an incalculable kind of interest" in one person. Moreover, the widow had not executed the contract.

In February 1981, a partition suit was filed in the court below by Sisler on behalf of seven of the Deacons naming as defendants the infants, the widow, and Louise Smith Deacon Sweet, who was a widow of another deceased son of the testator. The bill of complaint asked for an adjudication that partition of the tract among the parties could not be made conveniently, that none of the parties was willing to purchase the property, and that the interests of the parties would be promoted by a sale of the realty. There was a request for an order directing the sale of the tract "in conformity with the . . . contract or any possible amendment thereto which might result from an adjustment of the purchase price" to reflect

the acreage deficiency. Neither the realtor nor the purchaser was made a party to the suit.

Upon referral, a commissioner in chancery held a hearing in April 1981. The only witnesses who testified were appellants Helen Ann Deacon Smith and Wade Deacon, two of the plaintiffs in the suit. In May 1981, the Deacons learned the purchaser "wasn't going to go through with" the transaction. They asked Sisler's opinion on the enforceability of the contract. Sisler then told the Deacons to seek other counsel to represent them.

In a June 1981 report, the commissioner noted the acreage deficiency and said that the contract price "was reduced orally by the parties to $76,000" after the survey was completed. The commissioner further reported: "Subsequent to the hearing, it was called to the attention of the undersigned that the purchaser may not be willing to complete the sale." Based upon an April 1981 appraisal, the commissioner found the fair market value of the property to be $66,500. The commissioner further reported that the best interests of the parties would be promoted by a sale of the property and division of the proceeds. He said that if the sale to McGregor should not be confirmed by the court, then the property should be offered for sale publicly or privately.

There were no exceptions to the commissioner's report and, on June 18, 1981, the court appointed Sisler special commissioner to sell the property. One month later, the property was offered publicly after appropriate advertisement. Although the sale was well attended, the highest bid was in the amount of only $30,000. McGregor did not attend. The court rejected the bid and ordered a second appraisal in an order entered August 12, 1981.

On August 24, 1981, the realtor filed an action at law in the court below against the Deacons, the infants, and the purchaser. The realtor sought recovery of $7,600 plus about $3,000, representing the real estate commission plus attorney's fees and costs as provided in the contract. The realtor alleged that the contract was binding and enforceable, that the sellers and purchaser "agreed to a reduction in the sales price" to $76,000 because of reduced acreage and removal of timber from the realty subsequent to the execution of the contract, and that both the Deacons and McGregor had breached the contract. The realtor alleged that even though "all contingencies were eliminated," McGregor refused to purchase the property. The realtor also asserted that the Deacons' breach arose from the effort to sell the land at public auction,

"thereby attempting to defeat the commissions earned by your plaintiff." The realtor also alleged that "either through collusion or individually the parties, both the purchaser and the sellers, have agreed to disregard the terms" of the contract.

The action at law spawned cross-claims among the defendants. Following appointment of a guardian ad litem for the infant defendants, they were dismissed as parties on the ground that they had not signed the contract and, therefore, had no liability for its breach. A period of discovery followed in the law action.

On January 23, 1984, the trial judge wrote to counsel stating he had spent considerable time analyzing the chancery suit and the law action. He noted that the cases, and the various cross-claims, demurrers, and motions filed in the law action, "total up to a veritable Gordian Knot." After discussing the cases and certain principles of law pertinent to them, the court directed that the law action "be held in abeyance pending resolution of the partition suit." The court further directed that the suit be "remanded" to the commissioner in chancery to determine, *inter alia*, whether the contract was valid, whether it was amended by the parties, whether the realtor had any claim for commissions, and whether the property should be partitioned if no valid contract of sale existed.

In May 1984, the bill of complaint was amended to add the purchaser and the realtor as parties defendant. The Deacons, through new counsel, sought specific performance of the contract and, in the alternative, asked that the property be sold at public auction. If the net proceeds from a public sale were less than the net proceeds to be realized from a sale under the contract, the Deacons sought judgment against McGregor for the difference in those sums.

Answering the amended bill, the realtor united in the Deacons' prayer that the contract be specifically enforced against McGregor so the realtor could "obtain its rightfully earned real estate commission on the sale, together with its costs and attorney's fees." In her answer to the amended bill, McGregor, through new counsel, alleged the sellers had breached the contract by the "inability to convey good title" and denied that the plaintiffs were entitled to any relief against her.

The commissioner held a second hearing in October 1984. Testifying were a representative of the Federal Land Bank, Sheets, a land appraiser, Sisler, some of the Deacons, and McGregor.

In April 1985, the Deacons filed a petition reciting receipt of an offer to sell a right of way through the property to Virginia Electric and Power Company for the sum of $17,050. The Deacons asked the court to approve acceptance of the offer and, in the petition, summarized the events surrounding the contract controversy. Noting that "McGregor continues to refuse to honor the contract, your Plaintiffs pray that in lieu of specific performance of the contract, that they simply be awarded damages for the breach of the contract by Mrs. McGregor."

In May 1985, the commissioner filed a second report. The commissioner said that the trial court, "in its letter of January 23, 1984, in effect, consolidated this Cause" with the law action. The commissioner found that the contract was "valid between the parties." The commissioner made certain factual recitations and concluded "that Mrs. McGregor waived any deficiency in the acreage by permitting, through her own attorney, the chancery proceeding to continue through the hearing without objecting to any deficiency in acreage or notifying sellers in any manner." The commissioner said McGregor was "estopped" from relying on the acreage deficiency.

The commissioner further decided that the sellers did not abandon their right to damages under the contract by permitting the property to be offered for public sale. He also ruled that the parties "did validly amend" the contract to reduce the purchase price to $76,000 and that the parties, including McGregor, were "estopped" to deny there was an amendment. Finding that the realtor had "rights under the contract," the commissioner recommended that the Deacons pay the realtor's commission of $7,600 but that the Deacons and McGregor, "jointly and severally," should be liable for the realtor's attorney's fees and costs allowed under the contract "since they both proceeded in a fashion that ignored the rights of Clem & Company under the contract and defaulted as to Clem & Company, Inc."

The commissioner made a number of additional findings. For example, he found that as the result of an October 1984 appraisal the fair market value of the property was $64,500 and that, if the power company's offer were approved, the sale price of the property to McGregor should be reduced to $58,950. Finally, the commissioner recommended that, if specific performance by McGregor should not be ordered, she should be liable to the Deacons for damages in the event the property sold for less than $76,000 mi-

nus the amount to be paid for the power company's easement. All parties filed exceptions to the commissioner's report.

In June 1985, by a memorandum opinion which was later modified in one respect, the trial court made numerous rulings. Stating that the cases previously had been consolidated, the judge referred to "27 relevant findings" made by the commissioner in his second report. The court approved some findings while disapproving others.

The court ruled the contract was "binding." However, the court stated that because there "simply wasn't 200 acres there to convey," the contract could not be performed. The court held that "(a) the contract became void for impossibility of performance because of the deficiency in acreage and (b) there was no valid amendment to the contract but only an offer by Sellers, which was rejected by Buyer."

Additionally, the court found "that Sellers promptly took every reasonable step to convey good title," and that through "no fault" of either the sellers or buyer, "200 acres wasn't there." The court then found the Deacons liable for the realtor's commission and found them solely liable for the realtor's attorney's fees and costs. These items together totalled $10,972. The court confirmed the commissioner's finding that the Deacons and McGregor should pay their respective attorney's fees, but ruled that the survey cost of approximately $2,500 and the partition suit costs should be paid by the Deacons.

In August 1985, the court entered an order permitting acceptance of the power company's offer and appointed a special commissioner to convey the interest. In January 1986, the trial court entered a "Decree" from which we awarded the Deacons this appeal.

That decree embodied the rulings previously announced by the court. It ordered the law action stricken from the docket and directed that the partition suit remain pending, "in order that the Sellers and Infants may pursue said partition suit, if they be so inclined."

On appeal, the Deacons raise a number of issues. Contending they substantially complied with the contract, the Deacons say that McGregor is liable for their damages because she is equitably estopped from denying that the agreement was validly amended by a pro rata reduction in the purchase price. Alternatively, the Deacons contend they did not default under the contract because

the provision requiring a survey was a condition precedent which made the contract voidable at the option of the purchaser, and the purchaser did, in fact, rely on such provision in repudiating the agreement.

In addition, the Deacons assign error to the trial court's action in imposing liability upon them for the realtor's commission and fees. They say there were no pleadings or evidence to support such a result in the partition suit.

Further, they claim denial of their constitutional rights to trial by jury and to due process of law as the result of the trial court's action, *sua sponte*, in consolidating the equity suit with the law action. They also assert the trial court failed to follow the procedure outlined in Code § 8.01-270 (transfer of cases from one side of court to other).

McGregor asks us to affirm the order of the trial court. The realtor has not participated in the appeal.

■ In this case, the trial court has, on the major issues, disapproved the several reports of the commissioner in chancery. Therefore, our standard of review under these circumstances must be kept clearly in mind. We must "review the evidence and ascertain whether, under a correct application of the law, the evidence supports the findings of the commissioner or the conclusions of the trial court." *First National Bank of Martinsville* v. *Cobler*, 215 Va. 852, 854, 213 S.E.2d 800, 802 (1975). Our study of this tangled record convinces us that the trial court erred, in part.

■ First, we disagree with the Deacons' contention that they are entitled to an award of damages from McGregor upon the ground she was equitably estopped from denying that the agreement was validly amended by a pro rata reduction in the purchase price. In order to establish equitable estoppel, absent a showing of fraud and deception, there must be proof of a representation, reliance, a change of position, and detriment. *Dominick* v. *Vassar*, 235 Va. 295, 298, 367 S.E.2d 487, 489 (1988). Each element must be proved by evidence which is clear, precise, and unequivocal. *Id.*, 367 S.E.2d at 489.

■ The Deacons have failed to establish by the requisite degree of proof, as the trial court determined, that McGregor represented she was going to purchase the property with abatement in the purchase price. Throughout her testimony, she steadfastly denied she ever agreed to such a reduction. The Deacons merely agreed among themselves to such reduction, and Sisler, from his perspec-

tive in the middle of the controversy, erroneously assumed Mc-Gregor had so agreed. But clear, precise, and unequivocal proof is lacking to establish the first element of equitable estoppel, a representation by McGregor.

We do agree, however, with the Deacons' alternative contention that the survey provision of the contract was a condition precedent making the agreement voidable at the option of the purchaser. *See Scott* v. *Sutherland*, 229 Va. 122, 129, 327 S.E.2d 78, 82 (1985) (survey provision in real estate contract for purchaser's benefit alone). While the draft contract only referred to the tract as "200 Acres, more or less," the purchaser insisted upon the condition that, "Sellers must present a recent survey showing that property has 200 acres and right-of-ways."

"A condition precedent calls for the performance of some act, or the happening of some event after the terms of the contract have been agreed upon, before the contract shall take effect." *Morotock Ins. Co.* v. *Fostoria Novelty Co.*, 94 Va. 361, 365, 26 S.E. 850, 851 (1897). In other words, "the contract is made in form, but does not become operative as a contract until some future specified act is performed, or some subsequent event occurs." *Id.*, 26 S.E. at 852. Here, it does not matter whether one interprets the condition to mean the tract must contain *exactly* 200 acres or that it must contain *at least* 200 acres. In either event, the condition was not performed and, as the trial court said, through no fault of the sellers or buyer it could not have been performed. And McGregor did not waive the condition nor was she estopped from relying on it. Thus, the contract became void and neither the Deacons nor McGregor were bound. Hence, there was no default.

We turn to the award of the commission, attorney's fees, and costs in favor of the realtor against the Deacons. The record does not furnish the details of the listing agreement between the Deacons and the realtor. According to Sheets, he had a "listing form" signed by "everyone that was involved in the property" which gave him "the right to sell the property." We will assume, however, that the realtor agreed to find a purchaser ready, willing, and able to buy the property at the price and upon the terms agreed upon. For the reasons which we already have discussed, McGregor was not such a purchaser.

As noted, the collapse of the sale was not due to any fault of the sellers or buyer. McGregor was relieved of her obligation to

purchase by failure of the condition precedent. Because the contract became void relieving the parties of their obligations under it, the realtors as a matter of law were not entitled to a commission or any other charges, *see Rucker* v. *Peaco*, 191 Va. 128, 134, 59 S.E.2d 876, 878 (1950), and the trial court erred in ruling to the contrary.

Our decision of the foregoing issues renders unnecessary a determination of the remaining questions raised by the Deacons. Therefore, the decree appealed from will be affirmed, in part, and reversed, in part. All provisions of the decree not inconsistent with this opinion will be affirmed, including the provisions that the parties shall pay their respective attorney's fees and that the survey cost and costs of the partition suit shall be borne by the sellers. Final judgment will be entered here in favor of the Deacons in the action brought by the realtor. The case will be remanded to the trial court in order that the Deacons and infants may pursue the partition suit, if they be so inclined.

*Affirmed in part,*
*reversed in part,*
*and remanded.*