# CIRCUIT COURT OF THE CITY OF ROANOKE

W. Churchill Robison

v.

McLeod & Co.

June 4, 2002

Case No. CL01-1074

BY JUDGE CLIFFORD R. WECKSTEIN

For reasons that follow, the court overrules the defendant's special plea and motion for sanctions.

The plaintiff, W. Churchill Robison, sued defendant McLeod & Company, seeking damages for breach of a 36-month employment contract. McLeod, in a special plea, asked the court to dismiss the suit on the basis that no enforceable contract exists. The parties have stipulated that, in ruling on the special plea, the court could consider and accept as accurate and authentic documents appended to the briefs of counsel.

"A plea in bar is a defensive pleading that reduces the litigation to a single issue, which, if proven, creates a bar to the plaintiff's right of recovery. The party asserting a plea in bar carries the burden of proof." *Cooper Industries, Inc. v. Melendez*, 260 Va. 578, 594, 537 S.E.2d 580, 590 (2000) (internal citations and quotation marks omitted). Defendant McLeod asks the court to review pleadings and stipulated documents, and then to sustain its special plea and dismiss the suit. I cannot discover any opinion in which the Supreme Court of Virginia tells trial judges how they are to view the pleadings and documents when a request like this is made. However, I do not

think it difficult to predict what the Court would say. It would say that the trial court must accept as true the facts alleged in the motion for judgment and all reasonable inferences to be drawn therefrom and must give the plaintiff the benefit of inferences to be drawn from the stipulated documents, unless those inferences would be strained, forced, or contrary to reason; the judge must state the facts in the same way. See *Adkins v. Dixon*, 253 Va. 275, 277, 482 S.E.2d 797 (1997). The Supreme Court has of course "stated on several occasions that we disapprove the grant of motions which 'short circuit' the legal process thereby depriving a litigant of his day in court and depriving this Court of an opportunity to review a thoroughly developed record on appeal." Citations omitted. *Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax Seven, Ltd.*, 253 Va. 93, 95, 480 S.E.2d 471 (1997). In somewhat analogous situations, the Court has said that when a pleading called a "Motion to Dismiss" is "functionally a motion for summary judgment," it is "subject to Rule 3:18." *Gay v. Norfolk and Western Ry.*, 253 Va. 212, 214, 483 S.E.2d 216 (1997). See also *Aetna Casualty and Surety Co. v. Fireguard Corp.*, 249 Va. 209, 211, 455 S.E.2d 229 (1995); *Commercial Business Systems, Inc. v. BellSouth Services, Inc.*, 249 Va. 39, 41, 453 S.E.2d 261 (1995): "Although the trial court ruled on what was called a 'motion to dismiss,' the pleading in reality was a motion for summary judgment. A motion for summary judgment should not be granted if any material fact is genuinely in dispute. Rule 3:18. When a trial court considers a motion for summary judgment, it must adopt from the facts those inferences that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." The footnote in Justice Stephenson's opinion says: "This Court's Rules governing actions at law do not provide for a 'motion to dismiss'." The special plea in the case at bar is functionally equivalent both to a summary judgment motion and to a demurrer.

The key document in this case is a letter from McLeod & Company to Robison, dated July 14, 1999. The letter, signed by Fulton Gaylor, a principal or officer of McLeod, began by "confirming our offer to you to join a new business venture McLeod & Company will be establishing," and ended by saying, "Please sign below to acknowledge acceptance of this offer and forward to me in the enclosed envelope." Robison signed the letter above his printed name, beside the word, "accepted," and returned it to McLeod.

McLeod argues that the basic requirements of a contract, offer, acceptance, and consideration, were lacking. In addition, it asserts, Robison failed to fulfill an essential condition precedent. McLeod may be able to make these arguments to the jury; it may be able to argue that from the

evidence the jury should draw inferences in McLeod's favor. These arguments, however, do not permit the court to abort the case at this stage.

McLeod focuses on a provision of the July 14 letter which reads:

> We would be willing to give you a 36-month employment agreement that provided some severance payout if your employment was terminated without cause or if we decided to discontinue the new business. Let's just state in this employment agreement that the severance buy-out would be based on an annual number of $60,000. If you are terminated without cause during this first 36-month period, we will pay you one third of the remaining compensation for the 36-month period, based on $60,000 per year.

McLeod also notes another provision of the letter, which dealt with the execution of a covenant not to compete:

> Our firm policy is to have all professional staff members sign a confidentiality/covenant not-to-compete agreement. We have not drafted the non-compete agreement for the new entity yet, but a copy of the agreement signed by our current employees is enclosed for your review. We would amend the agreement to state that clients of yours, prior to your association with us, would be exempt from the non-compete agreement. We would also amend the agreement to state the agreement did not apply if we decided to discontinue the line of business.

Robison signed and returned the July 14 letter on July 29, 1999. On the same day, in a separate letter to McLeod, confirming his acceptance of the firm's offer, he wrote: "While I realize we still need to work out some minor details and draft a non-compete clause for the new business entity, I am nevertheless preparing for my move to Roanoke and a September 1st start date," noting that he was listing his house in Alexandria for sale.

Some months after Robison moved to Roanoke and began his job with McLeod, McLeod's Fulton Gaylor gave Robison a document with a cover note that said, "finally, I took this from attorneys drafting it. Employment Agreement & Non-compete. Review & sign or give me any questions soon." This document went well beyond what McLeod offered and Robison accepted in the July 14 letter; for example, it contained arbitration, liquidated damages, and attorney's fee provisions, but did not accurately mirror McLeod's accepted offer to exempt from the noncompete agreement clients of Robison, prior to his association with McLeod.

This draft was never signed. Approximately a year after Robison came to work with the firm, McLeod gave him a new draft "confidentiality/ noncompetition agreement." Although this document was shorter and narrower than the first document, its language, too, Robison asserts, is more restrictive than the July 14 letter's agreement that clients Robison had before his association with McLeod would be exempted from the noncompete agreement. He did not sign this document.[1] On May 10, 2001, McLeod & Company fired him.

"It is . . . elementary, that a contract to be valid and enforceable must be so certain that each party may have an action upon it, and to constitute a complete contract the minds of the parties must meet in mutual agreement on every material phase constituting the alleged agreement." *Kiser v. Amalgamated Clothing Workers of Am.*, 169 Va. 574, 581, 194 S.E. 727, 729 (1938). "A contract cannot exist if the parties never mutually assented to terms proposed by either as essential to an accord." *Valjar, Inc. v. Maritime Terminals, Inc.*, 220 Va. 1015, 1018, 265 S.E.2d 734 (1980). When material facts are not in dispute, "the issue of contract *vel non* is a question of law, to be decided by the court." *Jessee v. Smith*, 222 Va. 15, 17, 278 S.E.2d 793 (1981) (citations and internal quotation marks omitted). Determination of disputed material facts, however, is of course to be made by the jury. *Id.*

"An offer, which is usually but not always a promise, is a manifestation of a willingness to enter into a bargain. . . . The offer identifies the bargained

---

[1] On October 25, 2000, Robison sent an e-mail message to John McLeod of McLeod & Company, saying that he "got your note this afternoon indicating you wanted to get the confidentiality and non-compete agreement behind us. I do, as well and as we discussed yesterday it is being reviewed by my attorney in Washington, D.C., for conformance with SEC and NASD rules and regulations, my separate independent contractor arrangement with Raymond James and consistency with the terms under which I accepted the position in Roanoke." Robison continued, "Unfortunately, the securities business and the structure we envisioned is complicated, as evidenced by the time it took [McLeod's lawyers] to 'draft' an initial contract for discussion and the length of that initial agreement. When my attorney reviewed the [lawyers'] document he identified some issues and asked for a disk (or an e-mail version of it) so that it could be modified as necessary. (These same issues were apparently identified by [McLeod's lawyers].) I got what I thought was that disk on September 1st. However, it was a different document which he is now reviewing. After his review (and suggested changes, if any) we can hopefully agree on something that protects both of our interests and allows this business to move forward and achieve its potential. Until then, there is little I can do to speed up the process." Plaintiff's Exhibits in Opposition to Defendant's Special Plea, Ex. 7.

for exchange . . . and creates a power of acceptance in the offeree." *Chang v. First Colonial Savings Bank*, 242 Va. 388, 392, 410 S.E.2d 928, 930 (1991) (internal citations omitted); *Bridgestone/Firestone, Inc. v. Prince William Square Assocs.*, 250 Va. 402, 407, 463 S.E.2d 661, 664 (1995) ("Moreover, a court must construe the words as written and not make a new contract for the parties.").

While its July 14 letter used the familiar words "offer" and "accept," McLeod asserts that other language, such as "would be willing" and "let's state in this employment agreement," demonstrates, at best, only an intention to enter into a future agreement. While at a later stage, the parties may argue about whether this contention can be made to the jury, it fails as a basis for pretrial dismissal. A fair inference to be drawn from the letter is that McLeod offered Robison employment upon specific terms ("identified the bargained for exchange," *Id.*), vesting in Robison the power — by signing the letter on the "accepted" line — to go to work with McLeod on the terms offered. Had he wished, Robison could have responded with a counteroffer. He had done so before, "marking up" an earlier letter containing the same language the defendant focuses on here. (That particular language was not changed by Robison.) McLeod incorporated Robison's modifications into the July 14 letter. Plaintiff's Exhibits in Opposition to Defendant's Special Plea, Ex. 1. The offer that McLeod made and Robison accepted neither stated nor implied that any future writing would be necessary to complete the employment contract. *Compare Golding v. Floyd*, 261 Va. 190, 194, 539 S.E.2d 735 (2001). This case is not *Golding v. Floyd*. Here, the parties' contemplation is unmistakably set forth in their writing. Pursuant to their completed agreement, McLeod would prepare and Robison would sign a noncompete agreement, the terms of which were explicitly set forth in the letter. The terms of their mutual understanding were unambiguous. When Robison signed McLeod's letter, the negotiations had ended, and Robison had assented to McLeod's offer. *Bernstein v. Bord*, 146 Va. 670, 675, 132 S.E. 698, 699 (1926). His July 29 letter demonstrates that he understood the terms of the contract, including his obligation to sign a noncompete agreement. "If the letters show that the parties are fully agreed and intend to be bound thereby, the mere fact that a later formal writing is contemplated will not vitiate the agreement." *North Am. Managers, Inc. v. Reinach*, 177 Va. 116, 121, 12 S.E.2d 806 (1941).

A contract must be supported by consideration, "in effect, the price bargained for and paid for a promise." *Pierce v. Plogger*, 223 Va. 116, 121, 286 S.E.2d 207, 210 (1982). The July 14 letter specified, in detail, the salary and other compensation and benefits (including the option to acquire up to

20% of the ownership of the business over the next four years) that Robison would receive from McLeod in exchange for his efforts and knowledge, and the client accounts he brought with him. This was adequate consideration to support the contract. Furthermore, "the relinquishment of a present position in reliance on a promise to give permanent employment is a sufficient consideration for such a contract. . . ." *Kiser*, 169 Va. at 584. Robison accepted the job offer and gave up the position he held and his home in Alexandria in order to accept a 36-month position with McLeod in Roanoke. There is no merit to McLeod's argument that, without Robison's signature on a noncompete agreement, the employment contract failed for lack of consideration.

"A condition precedent calls for the performance of some act, or the happening of some event after the terms of the contract have been agreed upon, before the contract shall take effect." *Smith v. McGregor*, 237 Va. 66, 75, 376 S.E.2d 60, 65 (1989). Thus, when, a real estate contract was subject to a survey showing that the property contained 200 acres, *Id.* at 68, and the survey revealed that the land contained approximately 190 acres, a condition precedent was not met and neither the buyer nor the sellers were bound by the contract. *Id.* at 75.

Unlike the contract in *McGregor*, the July 14 letter contains no "subject to" or "conditioned upon" language. *See also Golding v. Floyd*, 261 Va. at 192. McLeod did not demand that Robison execute a noncompete agreement before it was contractually bound to him. What it required and Robison agreed to was that Robison sign a contract, the letter, that contained an unequivocal commitment to execute a confidentiality and noncompetition agreement whose terms the letter clearly spelled out. *Cf. Snyder-Falkinham v. Stockberger*, 249 Va. 376 at 385, 457 (1995). Furthermore, when considering whether to " 'short circuit' the legal process," *Seyfarth, Shaw*, 253 Va. at 95, I must be cognizant of the principle that "a contract will be construed more strictly against the party who prepared it." *Winn v. Aleda Const. Co.*, 227 Va. 304, 307, 315 S.E.2d 193, 195 (1984). McLeod's Gaylor authored and sent the July 14 letter on the firm's behalf and on its stationery.

McLeod, noting that the Supreme Court consistently has applied the principle that "a party who commits the first breach of a contract is not entitled to enforce the contract," *Horton v. Horton*, 254 Va. 111, 115, 487 S.E.2d 200 (1997); *Countryside Orthopaedics, P.C. v. Peyton*, 261 Va. 142, 154, 541 S.E.2d 279 (2001), argues that Robison committed the first breach of the provisions of the letter's terms, and thus is barred from attempting to enforce the other terms contained in the letter. "If a promisor is the cause of

the failure of performance of a condition upon which his own liability depends, he cannot take advantage of the failure." *Parrish v. Wightman*, 184 Va. 86, 92, 34 S.E.2d 229, 232 (1945). "Robison," McLeod contends, "materially breached the letter by refusing to execute the Tendered Agreement which contained the noncompete provision." McLeod & Company's Brief in Support of its Special Plea, at 6.

The overwhelming problem with this argument, at this stage of the case, is that it requires the judge to engage in fact-finding when there are material facts in dispute. A trier of fact might conclude from the evidence that, when Robison received the September 2000 document from McLeod, he materially breached his obligations under the July 14, 1999, contract by failing to promptly sign it or by submitting it to his lawyer for the review described in his e-mail message to John McLeod. A trier of fact also might conclude that the first proposed noncompete agreement the firm tendered after Robison came to work for McLeod showed that *it* was not going to comply with the terms of the contract and that therefore McLeod committed the initial breach. There is a factual dispute about whether Robison simply refused to sign the September 2000 agreement, whether he declined to sign it because it did not comply with the terms of the July 14 letter, or whether McLeod fired him before he made a decision about whether to sign the document. Such disputes of fact are for the jury, not the judge. Therefore, it is impossible for McLeod to meet its burden, on the special plea, of demonstrating that Robison committed the first breach. *See Cooper Industries*, 260 Va. at 594.

Both the last paragraph of McLeod's special plea and the concluding paragraph of its grounds of defense (filed at the same time as the special plea) pray "that the Court award Defendant its reasonable attorneys' fees and costs in defending this matter in accordance with Virginia Code § 8.01-271.1." The pertinent provisions of that statute read:

Every pleading, written motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, and the attorney's address shall be stated on the first pleading filed by that attorney in the action. . . . The signature of an attorney . . . constitutes a certificate by him that (i) he has read the pleading, motion, or other paper, (ii) to the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (iii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless

increase in the cost of litigation. If a pleading, written motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. . . . If a pleading, motion, or other paper is signed or made in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed the paper or made the motion, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper or making of the motion, including a reasonable attorney's fee.

No one legitimately can question the professionalism and integrity of the outstanding and upstanding lawyers who filed these defensive pleadings. I am not criticizing them when I respectfully suggest that this is not a case in which invocation of § 8.01-271.1 was warranted.

McLeod's special plea contended that when the court evaluated the facts behind Robison's claim, it would find the suit legally insufficient. McLeod was wrong and, as a practical matter, the decision on the special plea probably mandates denial of the sanctions motion. See, e.g., *Stevens v. Lawyers Mutual Liability Ins. Co.*, 789 F.2d 1056, 1060, 4 Fed. R. Serv. 3d 1151 (4th Cir. 1986). Without regard to how the court ruled on the special plea or what the ultimate verdict might be, however, I do not perceive this to be the sort of case in which there is reason to accuse a party and his lawyer of violating § 8.01-271.1.

In cases under § 8.01-271.1, "we judge [plaintiff's attorney's] conduct by an objective standard of reasonableness in order to determine whether, after reasonable inquiry, he could have formed a reasonable belief that the [motion for judgment] was well grounded in fact, and warranted under existing law or by a good faith argument for the extension, modification, or reversal of existing law." *Flora v. Shulmister*, 262 Va. 215, 220, 546 S.E.2d 427 (2001). Va. Code § 8.01-271.1 is of course Virginia's analogue to Rule 11 of the Federal Rules of Civil Procedure. The Fourth Circuit applies the same "objective standard of reasonableness" test under Rule 11. See, e.g., *Introcaso v. Cunningham*, 857 F.2d 965, 969 A.L.R. Fed. 1 (4th Cir. 1988).

In Rule 11 cases, the Fourth Circuit invokes a principle first expressed by the Supreme Court in a different context, before Rule 11 took on its current form. A "plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless or that the plaintiff continued to litigate after it clearly became

so." *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 422, 54 L. Ed. 2d 648, 98 S. Ct. 694 (1978).[2] A request for relief that accuses opposing counsel of violating § 8.01-271.1 impugns the attorney's professional integrity. It thus should be made only after the most sober consideration. Those who make such a request should, I suggest, satisfy themselves that they have a solid good-faith objectively reasonable belief that the opponent's claim is groundless, unreasonable, or frivolous. Just last November, the Supreme Court reminded trial judges that "an award of attorney's fees as a sanction should never be 'a routine matter'." *Tonti v. Akbari*, 262 Va. 681, 685, 553 S.E.2d 769 (2001). No harm was done here, but I fear that the invocation of § 8.01-271.1 has slipped into the "routine" prayers for relief of too many good lawyers.

Will counsel please tender a duly-endorsed order, consistent with and incorporating this opinion letter, and preserving the defendant's objections? Please also set up a scheduling conference at a mutually convenient time, or tender an agreed-upon pretrial order, or both. As we discussed earlier, I am ready and willing to enter an order, pursuant to Code § 8.01-576.5 *et seq.*, referring the parties to a dispute resolution evaluation session. As you know, the Supreme Court has a contract with the local Conflict Resolution Center under which Robison and McLeod could receive the services of trained mediators at no cost to the parties.

---

[2] Counsel for the defendant in the case at bar may have some passing familiarity with *Christiansburg Garment*.