Present:  All the Justices

DANIEL J. DOWLING,
EXECUTOR OF THE ESTATE
OF WILMA P. DOWLING

v.  Record No. 050181     OPINION BY JUSTICE DONALD W. LEMONS
                                November 4, 2005

VIVIANNE FRANCOISE
PELLETIER ROWAN, ET AL.

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
William T. Newman, Jr., Judge

In this appeal, we consider whether a premarital agreement constituted a waiver of the surviving spouse's claims for a statutory elective share of the decedent spouse's estate, family allowance, and to exempt property, and whether the surviving spouse claiming an elective share is entitled to attorney's fees.

I.  Facts and Proceedings Below

On July 10, 1993, Daniel Dowling ("Dowling") and his future wife, Wilma, entered a premarital agreement ("the Agreement").  The Agreement stated in prefatory language that "[t]he purpose of this Agreement is to settle the rights and obligations of each of them, during their marriage, upon the death of either or both of them, or in case of dissolution of the marriage."  In paragraph nine of the Agreement, they agreed "[t]he property currently belonging to each party and titled in his or her name shall remain his (her) separate

1

property." Both of them came into the marriage with significant assets that were listed in appendices to the Agreement.

During their marriage, Wilma established the Wilma P. Dowling Revocable Trust ("Revocable Trust"), the Wilma P. Dowling Irrevocable Life Insurance Trust ("Insurance Trust"), and executed a Last Will and Testament ("will") that devised her tangible personal property to her husband, Dowling, except for "that tangible personal property identified in our Prenuptial Agreement" which was devised to Wilma's daughter by a former marriage, Vivianne Rowan ("Rowan").

After Wilma's death, her will was submitted to probate and Dowling qualified as Executor of her estate in accordance with the will. Thereafter Dowling timely filed claims for an elective share of Wilma's augmented estate, family allowance of $18,000, and exempt property valued at $15,000. Dowling also claimed reimbursement of expenses related to administering the estate, funeral expenses, his Executor's commission, and attorney's fees, which brought the total sum of his claims to $371,678. Rowan opposed all of Dowling's claims.[1] Dowling is an attorney licensed in Virginia and he represented himself in the elective share litigation.

---

[1] Rowan answered in her personal capacity, as Trustee of the Insurance Trust, and as Co-Trustee of the Revocable Trust.

2

The trial court submitted the matter to a commissioner in chancery whose report concluded that the Agreement is unambiguous and constituted a waiver of any claims upon the property listed in the Agreement. After reviewing Dowling's exceptions to the commissioner's report and hearing argument ore tenus from the parties, the trial court overruled Dowling's exceptions and entered a decree consistent with the commissioner's findings of fact and conclusions of law.

In calculating Dowling's elective share, the trial court listed the items to be included and excluded from the augmented estate. Included were several bank accounts, jointly owned property, and tangible personal property not listed in the Agreement. The court excluded all real and personal property listed in the Agreement, certain real property located in Peru, the proceeds of Wilma's life insurance policies, and the value of benefits conferred upon Dowling under the Revocable Trust. The value of the property included in the augmented estate was $63,893. This amount was reduced by $44,606, the total amount of funeral expenses, various fees, and costs for administration of the estate.[2] The

---

[2] The trial court granted Dowling's claims for reimbursement for expenses including $8,604 for costs of administration of the estate, $15,439 for funeral expenses, and $13,922 for legal fees related to administration of the estate, and $6,641 for accountant fees.

3

remaining amount, $19,287, was the value of the augmented estate as determined by the trial court.

Pursuant to the trial court's conclusions, Dowling's elective share, one-third of the augmented estate, was $6,429. Since Dowling had already received assets from the estate totaling $52,806, and those assets must be deducted from the elective share, the trial court held that the estate would owe nothing to Dowling.  The court denied Dowling's claim for attorney's fees and costs relating to the elective share litigation.

Dowling, proceeding pro se, appeals the trial court's final order and maintains that the trial court erred in calculations of the augmented estate in its (i) exclusion of items listed in the Agreement, (ii) exclusion of the Peruvian properties, and (iii) exclusion of the life insurance policies.  Dowling also claims that the trial court erred in its denial of attorney's fees for his elective share litigation.

## II.  ANALYSIS

### A.  Property excluded from the augmented estate

#### 1.  Property listed in the Agreement

Parties to a premarital agreement can contract with respect to disposition of property upon separation, marital dissolution, death, or any other event.  Code § 20-150.  See

4

Code § 64.1-151.6 (a surviving spouse's rights to family allowance, exempt property, and homestead allowance can be waived by premarital agreement).  Premarital agreements "are contracts subject to the rules of construction applicable to contracts generally."  Pysell v. Keck, 263 Va. 457, 460, 559 S.E.2d 677, 678 (2002).

On appeal, we review a trial court's interpretation of the contract de novo.  Wilson v. Holyfield, 227 Va. 184, 188, 313 S.E.2d 396, 398 (1984) ("We have an equal opportunity to consider the words of the contract within the four corners of the instrument itself").  Where contracts are "plain upon their face, they are to be construed as written, and the language used is to be taken in its ordinary significance unless it appears from the context it was not so intended.  They are to be construed as a whole."  Virginian Ry. Co. v. Hood, 152 Va. 254, 258, 146 S.E. 284, 285 (1929); accord State Farm Ins. Co. v. Justis, 168 Va. 158, 167, 190 S.E. 163, 167 (1937); J.M. Turner & Co. v. Delaney, 211 Va. 168, 172, 176 S.E.2d 422, 425 (1970).

In this case, we revisit the issue that was before us in Pysell and determine whether this particular premarital agreement operates as a waiver of the surviving spouse's rights to property in the decedent's estate.  In Pysell, we held that no such waiver existed in the premarital agreement

5

because "nowhere . . . do we find a reference to either party's rights in the property of the estate of the other." 263 Va. at 460, 559 S.E.2d at 679 (construing a premarital agreement to apply only while the parties were living). This case is different.

The plain language of the Agreement in this case contains an express waiver of rights to specific property of the decedent upon death. The Agreement sets forth in prefatory language that "[t]he purpose of this Agreement is to settle the rights and obligations of each of them, during their marriage, *upon the death of either or both of them*, or in case of dissolution of marriage." (Emphasis added.) The explicit reference to rights "upon the death" is precisely the language that was lacking in Pysell.

Furthermore, there is an implicit reference to survivor's rights in paragraph five, which states:

> Each party fully understands that, in the
> absence of this Agreement, the law would
> confer upon him or her certain property
> rights and interests in the assets and
> property owned by the other, and it is the
> intent of each party, by this Agreement, to
> relinquish certain of such property rights
> and interests in such assets as specified
> herein.

Many property rights may arise by operation of law upon marriage. Lacking any language to the contrary, and considering the stated purpose of the Agreement, we hold that

6

the foregoing language refers to all property rights accrued during the marriage, including a surviving spouse's rights to an elective share, family allowance, and exempt property. The trial court did not err in holding that "[Dowling's] claims to elective share, family allowance and exempt property in Decedent's separate property listed in the appendices of the Premarital Agreement are denied as being barred by the terms of the Premarital Agreement . . . executed by Petitioner and Decedent prior to their marriage."[3]

However, Dowling did not completely waive his survivorship rights by executing the Agreement. Rather, paragraph five limits the waiver to "certain of such property rights and interests in *such assets as specified herein.*" (Emphasis added.) Under paragraph seven, each item of individually owned property is listed in the two appendices of the Agreement. Consequently, the waiver pertains only to a specific list of property. This interpretation is supported by paragraph nine wherein the parties agreed that "[t]he property currently belonging to each party and titled in his or her name shall remain his (her) separate property." This language does not conflict with any other portion of the

_____

[3] As expressed in the Assignments of Error, the claims for family allowance and exempt property are made only against "Wilma's separate property listed in the appendices of the Premarital Agreement."

7

Agreement. In fact, it appears to accord perfectly with the stated intent in paragraph five to "relinquish" certain rights in the property of the other.

This court is duty bound to construe a contract as a whole, considering every word and every paragraph, if there is a sensible construction that can be given. E.g., State Farm, 168 Va. at 167, 190 S.E. at 167; J.M. Turner & Co., 211 Va. at 172, 176 S.E.2d at 425. Read together, the quoted portions of the Agreement establish that (i) the Agreement applies upon death, (ii) it pertains to certain rights in certain assets specified therein, and (iii) separate property is to remain separate. There is no conflicting language within the four corners of the Agreement.

We agree with the trial court that the Agreement constituted a waiver of rights in the property designated as "separate property" under the Agreement. Accordingly, Dowling's claims to elective share, family allowance, and exempt property cannot be satisfied using any property listed in the appendix to the Agreement.[4]

---

[4] Dowling raises an additional argument seeking satisfaction of his elective share from property bequeathed to Rowan. He cites Joint Admission No. 21 which states: "[Dowling] is entitled to property specifically bequeathed or devised to Ms. Rowan in order to satisfy his elective share." Dowling makes much of the fact that, under Rule 4:11(b), the admission would be conclusively established for the purposes of the trial court proceeding. We agree with Dowling's

## 2. Real property in Peru

At the time of her death, Wilma held a remainder interest in various real properties located in Peru that she acquired by intestate succession. This property is not listed in the Agreement. Wilma acquired this interest after she was married to Dowling. The trial court excluded the value of these properties from the augmented estate pursuant to Code § 64.1-16.1(B)(ii) which directs exclusion of property from the augmented estate which is "received by the decedent by gift, will, intestate succession . . . to the extent such property, income or proceeds were maintained by the decedent as separate property." The question before us is whether Wilma "maintained" this property as separate property.

The construction of a statute is a question of law which we review de novo. Wilby v. Gostel, 265 Va. 437, 440, 578 S.E.2d 796, 798 (2003); Ainslie v. Inman, 265 Va. 347, 352, 577 S.E.2d 246, 248 (2003). We are bound by the plain meaning of the words used "unless a literal interpretation would result in a manifest absurdity." Horner v. Dep't of Mental

---

argument regarding the effect of an admission, however it is irrelevant to the issues before us. The trial court calculated that Dowling's elective share was a mere $6,429, and the amount was offset by Dowling's receipt of assets from the estate valued at $52,806. See Code § 64.1-16.2(A). Since Dowling's elective share was more than satisfied by property already received, there is no issue regarding satisfaction of elective share from property listed in the appendices.

9

Health, 268 Va. 187, 192, 597 S.E.2d 202, 204 (2004).  Accord In re: Gordon E. Hannett, 270 Va. 223, 233, 619 S.E.2d 465, 469 (2005).

Dowling urges this Court to require physical repair or maintenance upon the property to consider it "maintained as separate" under the statute.  We disagree.  The properties at issue were located in Peru and Wilma's relatives who held a similar interest occupied several of the properties.  It would be manifestly absurd to require that Wilma travel to another country, enter upon land occupied by another person, and perform physical improvements as an act of "maintenance" in order to retain the "separate" nature of the property.

Looking to the context of the word "maintain" in the statute, the language does not refer to physical maintenance of "property," "income" or "proceeds."  Code § 64.1-16.1(B)(ii).  Rather, the language of the statute refers to keeping a legal interest in the property separate.

At times we consider statutes relating to the same subject matter to help provide meaning to the statute before us.  See Turner v. Commonwealth, 226 Va. 456, 459-60, 309 S.E.2d 337, 338 (1983).  There is ample authority on the matter of separate property within domestic relations law. The equitable distribution statute defines separate property to include "all property acquired during the marriage by

bequest, devise, descent, survivorship or gift from a source other than the other [spouse]."  Code § 20-107.3(A)(1)(ii). Such property will retain its "separate" status for purposes of equitable distribution unless one of several circumstances transmutes the nature of the property, such as commingling separate assets with marital assets or retitling the property in the joint names of the spouses.  Code § 20-107.3(A)(3)(d), (e), and (f).  Since the primary purpose of the equitable distribution statute is to provide a fair manner for classifying assets accumulated during a marriage, we find that this body of law is sufficiently analogous to the issue at hand to inform our decision.

Dowling did not argue that Wilma took any action, such as commingling or retitling, which would defeat the separate status of her remainder interest in the Peruvian properties. In fact, Dowling emphatically argued that Wilma did nothing with regard to these properties.  On this basis we conclude that Wilma's interest in the Peruvian properties was maintained as separate and the trial court properly excluded the value of these properties from the augmented estate.

### 3.  Life insurance policies

Wilma owned two life insurance policies that were not listed in the Agreement.  Three years before her death, Wilma established an irrevocable life insurance trust, transferred

11

the policies to the trust, and named her daughter as beneficiary of the trust.  The policies had no investment or "cash" value on the date of transfer.[5]

A life insurance policy subject to the decedent's control on the date of an irrevocable transfer is treated as "property" within the augmented estate statute.  Code § 64.1-16.1(D).  Property transferred to a third party donee within five years prior to death will be included in the augmented estate to the extent that the transferred value exceeds $10,000 in the calendar year of transfer.  Code § 64.1-16.1(A)(3)(d).  The party seeking inclusion of property in the augmented estate under Code § 64.1-16.1(A) has the burden of proof.  Chappell v. Perkins, 266 Va. 413, 418, 587 S.E.2d 584, 587 (2003).  Accordingly, Dowling has the burden to show that the value of the life insurance policies exceeded $10,000 in the calendar year they were transferred.

Valuation of a life insurance policy is governed by Code § 64.1-16.1(C)(2), which states that

> [t]he value of an insurance policy that is irrevocably transferred during the lifetime of a decedent is the cost of a comparable policy on the date of transfer or, if such a policy is not readily available, the policy's interpolated terminal reserve.

---

[5] The Midland National Life Insurance policy was a "graded" whole life policy with no cash value until Wilma reached 80 years of age.  The Garden State Life Insurance policy was a term life policy with no cash value.

The evidence offered by Dowling does not satisfy his burden.  Dowling maintains that evidence of a "comparable policy" is not available for the date of transfer, and there was no interpolated terminal reserve.  Dowling urges the Court to recognize the "full proceeds of the existing policies" as the appropriate measure of value.  Were we to adopt Dowling's position, it would effectively rewrite the plain language of Code § 64.1-16.1(C).  "Where the General Assembly has expressed its intent in clear and unequivocal terms, it is not the province of the judiciary to add words to the statute or alter its plain meaning." Jackson v. Fidelity & Deposit Co., 269 Va. 303, 313, 608 S.E.2d 901, 906 (2005).

Moreover, we think it is self evident that the value of a term life insurance policy upon transfer before death of the named insured is not the full death benefit.  Having rejected Dowling's position that the value of the policies is the face value of the death benefit, the only remaining evidence in the record is that offered by Rowan which is the annual premiums in the year of transfer, a sum far less than $10,000.  Consequently, Dowling has failed to prove the $10,000 threshold to trigger the "pull back rule" in the statute.  We hold that upon this record the life insurance policies were properly excluded from the augmented estate.

13

B.  Attorney's fees

The trial court awarded Dowling $13,922 in legal fees related to the administration of the estate, but denied his claim for legal fees related to the elective share litigation. Dowling argues that the trial court erred in denying his claim for attorney's fees related to the elective share litigation.

We adhere to the "American rule" which embodies the principle that each litigant must pay his own attorney's fees in the absence of a statute or contractual provision that would shift the burden of payment to the unsuccessful party. E.g., Lee v. Mulford, 269 Va. 562, 565, 611 S.E.2d 349, 350 (2005); Mullins v. Richlands Nat'l Bank, 241 Va. 447, 449, 403 S.E.2d 334, 335 (1991).  In Virginia, there is no statutory basis for an award of attorney's fees to the surviving spouse in elective share litigation.

Dowling attempts to get around this problem by arguing that his elective share litigation will help resolve questions that must necessarily be answered "to properly settle" the estate.  He relies upon Code § 26-30 to support his claim which states that the commissioner "shall allow the fiduciary any reasonable expenses incurred by him as such."  In construing this statute, we have held that reasonable expenses can be paid out of the estate when the fiduciary, in *execution of his duties*, proceeds in good faith and the aid of counsel

is reasonably necessary for performance of the fiduciary's duties.  Clare v. Grasty, 213 Va. 165, 170, 191 S.E.2d 184, 188 (1972) (partially denying appellant's claims to attorney's fees for those portions of his litigation that were detrimental to the estate).  Dowling's reliance upon this Code section and our holding in Clare is misguided.

In Clare, we specified that attorney's fees will not be awarded to an executor whose litigation seeks to frustrate the testator's expressed wishes.  213 Va. at 171, 191 S.E.2d at 188-89.  In this case, Dowling's personal interests are adverse to those of the estate, to which, as a fiduciary, he owes a duty of utmost fidelity.  See Pritchett v. First Nat'l Bank of Danville, 195 Va. 406, 412, 78 S.E.2d 650, 653 (1950) (fiduciaries have the duty to exercise "the highest fidelity" and "utmost good faith" in how they deal with an estate).  Our opinion in O'Brien v. O'Brien, 259 Va. 552, 526 S.E.2d 1 (2000) is particularly instructive on this point.  There, two brothers who were co-executors of their deceased mother's estate sued the third brother, in his individual capacity and as co-executor, to collect a debt to the estate.  O'Brien, 259 Va. at 554, 626 S.E.2d at 2.  We approved the trial court's ruling which granted attorney's fees to the co-executors who sued on behalf of the estate to recover the debt and denied attorney's fees for the defendant brother.  Id. at 557-58, 526

S.E.2d at 4.  We reasoned that the defendant's attorney's fees "were incurred for his personal benefit and not to benefit the estate or to aid him in his duties as executor."  Id.  The critical distinction in O'Brien among the brothers was based upon function, not form, with regard to the interests of the estate.

Such is the case here.  Dowling's attempt to characterize his elective share litigation as "necessary" to settle the estate confuses his function as Executor with his personal interests.  The only issues that need settling are those created by Dowling.  Certainly he has a right to pursue his elective share litigation but he is not entitled to be compensated from the estate for doing so.

Because the purpose of Dowling's elective share claim is easily distinguishable from his duties as Executor of the estate, the trial court properly granted Dowling the fees for administration of the estate while denying his claim for fees related to the elective share litigation.

### III.  CONCLUSION

Based on the foregoing reasons, the trial court did not err in its ruling regarding the property to be included in the augmented estate or its holding regarding claims of elective share, family allowance, or exempt property.  Further the

16

trial court did not err in denying attorney's fees to Dowling.

We will affirm the judgment of the trial court.

Affirmed.