COURT OF APPEALS OF VIRGINIA


Present:    Judges Humphreys, Beales and Senior Judge Coleman
Argued at Richmond, Virginia


SERVANDO DE LA ROSA HERRERA
  BY FRANCISCA VARELA
                                                            OPINION BY
v.          Record No. 1878-06-2              JUDGE ROBERT J. HUMPHREYS
                                                            MARCH 27, 2007
E. DALE MARTIN, VIRGINIA AGRICULTURAL
  GROWERS ASSOCIATION, CASUALTY RECIPROCAL
  EXCHANGE, JORGE DEL ALAMO/DEL AL ASSOCIATES, INC.
  AND UNINSURED EMPLOYER'S FUND


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Jamie L. Karek (Geoffrey R. McDonald & Associates, P.C., on
          brief), for appellant.

          S. Neil Stout (Steven T. Billy; Stout, Billy & Seli, on brief), for
          appellees E. Dale Martin, Virginia Agricultural Growers Association
          and Casualty Reciprocal Exchange.

          Richard H. Milnor (Zunka, Milnor, Carter & Inigo, Ltd., on brief),
          for appellee Jorge del Alamo/Del Al Associates, Inc.

          Christopher D. Eib, Senior Assistant Attorney General (Robert F.
          McDonnell, Attorney General; John J. Beall, Jr., Senior Assistant
          Attorney General, on brief), for appellee Uninsured Employer's
          Fund.


        The statutory beneficiaries of Servando de la Rosa Herrera ("Herrera"), deceased, appeal

the dismissal of their application for benefits by the Virginia Workers' Compensation

Commission ("commission").  Herrera argues that the commission erred in finding that it lacked

jurisdiction to adjudicate their claim for benefits.  For the following reasons, we affirm.

BACKGROUND

On appeal, the findings of fact made by the commission are binding upon us when supported by credible evidence. See Ablola v. Holland Rd. Auto Center, Ltd., 11 Va. App. 181, 183, 397 S.E.2d 541, 542 (1990). So viewed, the facts are as follows.

A. Procedural History

Herrera, a Mexican agricultural worker, died in a bus accident on July 20, 1999, while in transit from Morelas to Monterrey, Mexico. On June 9, 2000, Herrera's wife, Francisca Varela ("Varela"), filed a claim for benefits on behalf of herself and her two children.[1] On November 18, 2003, a deputy commissioner found that the claim was barred because the claimant executed a settlement with the bus company, the known tortfeasor, without the knowledge and consent of the defendants.

Herrera requested a full commission review, and on July 19, 2004, the full commission remanded the case, requiring the deputy commissioner to address whether the commission had jurisdiction to hear the claim. On August 25, 2005, a deputy commissioner found that the commission did not have jurisdiction to hear the case because Herrera failed to prove a contractual relationship of employment existed, as required by Code § 65.2-508(A).

Herrera again requested a review by the full commission. On review, the full commission found that Herrera failed to prove that "a contract for employment with any of the alleged employers existed at the time of the decedent's death," and affirmed the opinion of the deputy commissioner. Specifically, the commission found that, "at the time of [Herrera's] death, a contract of employment was anticipated, but not completed." And, although Herrera "was en route [to an American consulate] to obtain his visa at the time of his accident, this was only one

---

[1] Although Varela filed the claim on behalf of herself and her children, we will refer to the appellant as "Herrera," the decedent's name.

step in the process of gaining entry to the United States to work for [E. Dale] Martin."[2]  Herrera appeals that decision to this Court.

### B.  Factual History

There are four appellees in this case, E. Dale Martin ("Martin"), Jorge del Alamo/ Del Al Associates ("Del Al"), Virginia Agricultural Growers Association ("VAGA"), and the Uninsured Employer's Fund ("UEF").[3]  Viewing the evidence in the light most favorable to these parties, see R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990), their respective roles and involvement in this case are essentially as follows:

### E. Dale Martin

Martin, a Virginia farmer, employed foreign workers under the federal H2A program.[4] He was a member of the VAGA, and utilized the VAGA to take the necessary steps to bring Mexican workers into Virginia to work for him.  In 1996, 1997, and 1998, Herrera worked on Martin's tobacco farm.  In fact, Martin specifically requested Herrera for the 1997 and 1998 harvests.[5]  Martin again requested Herrera for the 1999 harvest, but Herrera never arrived.

---

[2] The dissenting commissioner opined that, "[a] continuous employment relationship existed over a period of four years, and the fact that certain paperwork had to be completed in order to successfully resume work in the 1999 season does not refute the existence of an implied contract."

[3] At oral argument, Herrera's counsel conceded that Del Al and the VAGA were not employers and, thus, abandoned the claims as to those parties.  And by virtue of abandoning his claim as to Del Al, Herrera also abandoned his claim as to the UEF.  Accordingly, although we include the factual roles these parties play for the purpose of providing a complete context for the legal issue presented, our holding only addresses the issue presented by Herrera with respect to Martin.

[4] This program allows aliens to work temporarily in the United States.  Until 9/11/2001, the program existed under the federal Immigration and Nationality Act.  However, because of post 9/11 restructuring, the program now falls under the Department of Homeland Security.

[5] Martin testified that although he could request specific workers by giving the names to Eloise Wilder, VAGA's secretary, he was not guaranteed those workers.

Instead, Eloise Wilder ("Wilder") notified Martin that Herrera had been killed in a bus accident. Wilder notified Martin so that he could take the appropriate steps to find a replacement worker.

Martin testified that when a worker arrived at his farm, he presented the worker with an employment contract and that he required the worker to complete an I-9 form, or an "Employment Verification Form." Martin had completed an employment contract with Herrera in 1996, 1997, and 1998, but had not done so for 1999. In fact, Martin testified that he did not know that Herrera was being sent to his farm until he was told about the accident. Martin denied completing an employment contract and an I-9 form for Herrera in 1999. He also denied having seen a visa for Herrera containing a sticker with his name.

### Jorge del Alamo/Del Al Associates

Jorge del Alamo owned Del Al Associates,[6] a company employed by the VAGA to recruit workers from Mexico. Del Al helped workers complete I-9[7] and "I-94 Arrival/Departure Record"[8] forms, and maintained the forms until the worker received a visa. Once the worker had a visa, passport, and I-94 form, the worker traveled to the border and presented his information to an Immigration and Naturalization Service[9] employee. At this point, the worker would be

---

[6] Del Al did not have workers' compensation insurance, thus resulting in Herrera's now abandoned claim against the Uninsured Employer's Fund ("UEF").

[7] There is a discrepancy in the factual record as to whether Del Al helped workers complete this form prior to entry or whether the forms are completed when the worker arrives at his work location. Resolving this discrepancy in the light most favorable to the prevailing party as we must, Mullins, 10 Va. App. at 212, 390 S.E.2d at 788, we conclude that the I-9 forms are completed once the worker reached his place of employment and that both the worker and the employer then complete portions of the form.

[8] The worker presents this document, along with a visa and passport, at the port of entry. At this time, the worker is either granted or denied admission to the United States.

[9] In the government reorganization following the events of 9/11/2001, the Immigration and Naturalization Service was transferred from the Department of Justice to the Department of Homeland Security and renamed Immigration and Customs Enforcement (ICE).

granted or denied entry. Del Al did not employ workers, but rather assisted them in compiling the necessary documents to obtain work in the United States.

Virginia Agricultural Growers Association

The VAGA was a private organization with the primary goal of securing adequate and legal workers for growers in Virginia. The VAGA processed paperwork required by different governmental agencies, which included applying to the United States Department of Labor for approval to have foreign workers. At the time the workers are requested, the identities of the workers are unknown. The VAGA used agencies, including Del Al, to procure workers from Mexico.

ANALYSIS

The parties do not dispute that the purported employer's place of business, Martin's farm, is in Virginia. Instead, Herrera argues on appeal that the commission erred in finding that it lacked jurisdiction to adjudicate his claim because Herrera failed to prove there was a contract for employment with Martin. Specifically, Herrera contends that "[a] contract for employment was formed between Mr. Martin and [himself]" and, thus, the commission had jurisdiction to hear the claim. For the following reasons, we disagree and affirm the commission.

On appeal, "the award of the [c]ommission . . . shall be conclusive and binding as to all questions of fact." Code § 65.2-706; see also Ablola, 11 Va. App. at 183, 397 S.E.2d at 542. However, while we must defer to the factual findings of the commission, we review *de novo* the commission's application of the law to those findings in determining whether a contract for employment existed. See Roanoke Belt v. Mroczkowski, 20 Va. App. 60, 68, 455 S.E.2d 267, 270-71 (1995).

"Jurisdiction over workers' compensation claims in Virginia is governed by statute." Pro-Football Inc. v. Paul, 39 Va. App. 1, 7-8, 569 S.E.2d 66, 70 (2002). According to Code

- 5 -

§ 65.2-508, the commission has jurisdiction over a claim if "[t]he contract of employment was made in this Commonwealth," and "[t]he employer's place of business is in this Commonwealth." See Pro-Football, 39 Va. App. at 7-8, 569 S.E.2d at 70. To determine where the contract was made, we look to "[t]he place where the last act necessary to give validity to the contract occur[ed]." Id. at 9-10, 569 S.E.2d at 71 (citing Smith v. McBride & Dehmer Construction, 530 P.2d 1222, 1225 (Kan. 1975) (holding that an employment contract was made in Oklahoma because the last act done necessary to consummate the contract of employment was for the employee to report at the job site in Oklahoma)).

Moreover, "[a] condition precedent [may call] for the performance of some act, or the happening of some event after the terms of the contract have been agreed upon, before the contract shall take effect." Morotock Ins. Co. v. Fostoria Novelty Glass Co., 94 Va. 361, 365, 26 S.E. 850, 851 (1897). In other words, absent the fulfillment of the conditions precedent, a contract does not exist. Smith v. McGregor, 237 Va. 66, 376 S.E.2d 60 (1989) (holding that an agreement is inoperable until all conditions precedent are performed); see also Pro-Football, 39 Va. App. at 10, 569 S.E.2d at 70.

In this case, the commission found that Herrera "never completed all the steps necessary to secure his employment in the United States with an employer." Specifically, the record indicates that at the time of his death, Herrera was en route to pick up his visa and, thus, had not obtained one of the necessary documents for entry into the United States. Moreover, Herrera had not filled out an I-9 form, which is also necessary to obtain employment in the United States, or executed an employment contract.

Thus, the commission found that, at the time of Herrera's death, a contract was "anticipated, but not completed," and it would be "speculative" to assume that Herrera would complete the remaining steps necessary to be employed in the United States. We agree.

Moreover, Herrera did not fulfill the conditions precedent to create a valid contract; specifically, actually gaining entry to the United States, appearing at the job site, and signing an employment contract. Based on these factual findings, we hold that Herrera failed to complete the "last act necessary" to create a valid employment contract.

Herrera argues that the issuance of his visa fulfilled the "condition precedent to his ability to work in the United States." Specifically, Herrera argues that the visa was issued at an American consulate and, thus was on American soil. He contends that, "[w]hile this is not Virginia soil, it is not considered to be a part of any other state" and, therefore, "there is a sufficient basis for the commission to entertain jurisdiction over the claim."

While procurement of a visa may be a "condition precedent to working in the United States," that does not end the analysis necessary to determine whether a contract of employment existed. The commission held that standing alone, the "visa issued was not a contract for employment, regardless of where it was issued." Furthermore, the commission did "not accept the argument that a [United States Consulate] outside of the Commonwealth is necessarily a part of the Commonwealth for worker's compensation purposes." Herrera argues that Coldtrain v. Starco, Inc., 65 OIC 66 (1976), supports his proposition. We disagree with this assertion for two reasons.

First, decisions of the commission are not binding on this Court. See Bay Concrete Constr. Co. v. Davis, 43 Va. App. 528, 538, 600 S.E.2d 144, 150 (2004) (stating that this Court is "not bound by the commission's legal analysis in this or prior cases" (internal citation omitted)). And second, we note a crucial distinction between Coldtrain and the present case: the military operation in Coldtrain was located inside the Commonwealth. Here, the consulate was located in Mexico, and as such, we find no merit in Herrera's argument that merely procuring his visa satisfied all the conditions precedent to obtaining employment in the United States. Thus,

we affirm the commission's decision that an employment contract did not exist between Herrera and Martin, as required by Code § 65.2-508(A).

## CONCLUSION

Because Herrera did not complete all the steps necessary to enter into a valid employment contract with Martin, we hold that an employment contract, as contemplated by Code § 65.2-508(A) did not exist.  Thus, we agree that the commission did not have jurisdiction to entertain this claim, and we affirm the commission.

<u>Affirmed.</u>