COURT OF APPEALS OF VIRGINIA


Present:   Judges McClanahan, Haley and Beales
Argued at Salem, Virginia


PATRICIA ANN SOMMERS NERVO

                                                     MEMORANDUM OPINION* BY
v.        Record No. 2809-08-3            JUDGE ELIZABETH A. McCLANAHAN
                                                          NOVEMBER 24, 2009
EUGENE THOMAS NERVO


                FROM THE CIRCUIT COURT OF ROANOKE COUNTY
                              Charles N. Dorsey, Judge

              Tommy Joe Williams for appellant.

              Charles B. Phillips (Phillips & Phillips, on brief), for appellee.


        Patricia Ann Sommers Nervo (wife) appeals from the trial court's rulings (i) that, under

the terms of the property settlement agreement (PSA) between wife and Eugene Thomas Nervo

(husband), "financing was not a precondition" to her purchase of husband's share of certain

marital property; and (ii) that she forfeited to husband a $95,000 deposit because "she fail[ed] to

close [on] the transaction."  Wife contends the trial court erred in so ruling because the express

terms of the PSA conditioned both her purchase of the property and her forfeiture of the deposit

upon her ability to obtain financing for the purchase, which she was unable to do.  We agree with

wife, and, therefore, reverse the judgment of the trial court and remand for further proceedings.


_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

In the course of their divorce proceedings, husband and wife reached a settlement agreement for the distribution of their marital property. Pursuant to Code § 20-155,[1] terms of their PSA were recorded and transcribed by a court reporter, as orally represented to the trial court by husband's counsel, which the parties then affirmed on the record. The agreement was also recited, in greater detail, in the parties' final decree of divorce, as endorsed by counsel.

Reciting the PSA for the record, husband's counsel stated, in relevant part, that the parties had agreed wife would purchase their jointly owned business "known as Wilderness Adventure" and related real estate located in Craig County, for which she would pay husband $951,800 within ninety days. This purchase would be made "*after* [wife] receive[d] her financing." (Emphasis added.) The parties further agreed that wife was responsible for a ten percent down payment, "rounded off to $95,000." As security for this down payment, wife would give husband a deed of trust against certain other marital property, referred to as the "Greenhill" property. Accordingly, upon the sale of the Greenhill property, husband would "get $95,000 off the top . . . *if* it happens that way. But *if* [wife] . . . completed paying him the $951,800 [before the sale of the Greenhill property] of course [huband would] release that deed of trust . . . ." (Emphasis added.)

The parties' final divorce decree then provided in regard to the subject purchase as follows:

---

[1] Code § 20-155 provides that

> [m]arried persons may enter into agreements with each other for the purpose of settling the rights and obligations of either or both of them . . . . If the terms of such agreement are (i) contained in a court order endorsed by counsel or the parties or (ii) recorded and transcribed by a court reporter and affirmed by the parties on the record personally, the agreement is not required to be in writing and is considered to be executed. . . .

2. Pursuant to the agreement of the parties, it is ORDERED that the parties forthwith list for sale the following parcels of real estate currently owned by them:

a. 2920 Green Hill (Lot 1), Roanoke County, VA

\* \* \* \* \* \* \*

In the event that the [h]usband has not been paid for his interest in the real estate and business associated with Wilderness Adventure at Eagle Landing (hereafter referred to as "WAEL"), the [h]usband shall be paid $95,000 upon the closing of 2920 Green Hill Drive. *Upon the payment of such amount to the [h]usband, the [w]ife shall receive a credit towards her purchase of the [h]usband's interest in WAEL as more specifically set forth below.*

3. In accordance with the agreement of the parties, the [w]ife shall, within 90 days of this decree, purchase the [h]usband's interest in real estate, stock and business assets associated with WAEL.

\* \* \* \* \* \* \*

After deductions for the liabilities associated with the real estate and the business, and after further deduction of the [w]ife's one-half interest in such properties, the parties agree that the [h]usband shall be paid the sum of $951,800 for his interest. The [w]ife agrees to pay such amount, *subject to her obtaining final approval of her financing. In consideration of the agreement of the parties, the [w]ife shall forthwith pay to the [h]usband a deposit of $95,000.00.* The deposit shall be satisfied by the [w]ife executing of [sic] a [n]ote payable to the order of the [h]usband. Such note shall be secured by a third deed of trust against the parties' marital home located at 2920 Green Hill Road. . . .

Should the [w]ife not close on the WAEL real estate and business within 90 days of this decree, the WAEL real estate and business shall then be listed for sale with a mutually agreeable agent. *Should the [w]ife not close on the transaction as specifically set forth herein, she shall forfeit to the [h]usband the $95,000.00 deposit. . . .*

(Emphasis added.)

Wife subsequently filed a motion with the trial court seeking a determination that she was not in "default" under the PSA for her failure to purchase the WAEL real estate and business because her applications for financing at three different banks had been "refused." For the same reason, she also sought a determination that she had not forfeited her $95,000 deposit.

- 3 -

The parties stipulated to the trial court that wife had timely sought, but was refused, financing for the subject purchase.[2] However, the trial court ruled that, based on its interpretation of the PSA, "the financing was not a precondition to buy the property, and that, furthermore, [wife] forfeit[ed] the sum of $95,000 for failure to close the transaction . . . ." Wife challenges these rulings on appeal.

ANALYSIS

Our review of this appeal is governed by well established principles. "The trial court's interpretation of the PSA is an issue of law that we review *de novo*." Stacy v. Stacy, 53 Va. App. 38, 43, 669 S.E.2d 348, 350 (2008) (*en banc*) (citations omitted). Upon our review of the PSA, we apply the same rules of construction that are applied to other contracts. Id. at 44, 669 S.E.2d at 350. Accordingly, the question for this Court is """what did the parties agree to as evidenced by their [PSA]. The guiding light in the construction of [the PSA] is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares.""" Id. at 44, 669 S.E.2d at 351 (quoting Irwin v. Irwin, 47 Va. App. 287, 293, 623 S.E.2d 438, 441 (2005) (quoting Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984))). We are also "duty bound to construe [the PSA] as a whole, considering every word and every paragraph, if there is a sensible construction that can be given." Dowling v. Rowan, 270 Va. 510, 518, 621 S.E.2d 397, 400 (2005) (citations omitted); see Ward's Equip. v. New Holland N. Am., 254 Va. 379, 384, 493 S.E.2d 516, 519 (1997) ("A contract must be construed as written and as a whole with all parts being harmonized whenever possible." (citations omitted)). Finally, "breach of covenant to sustain forfeiture is construed strictly against forfeiture. The instrument must give the right of forfeiture in terms so

---

[2] It appears husband raised no issue regarding wife's efforts in seeking financing for the purchase in light of her submission of loan applications with the three banks.

clear and explicit as to leave no room for any other construction." Davis v. Wickline, 205 Va. 166, 169, 135 S.E.2d 812, 814 (1964) (citations omitted).

Applying these principles, we agree with wife that the trial court incorrectly interpreted the PSA in ruling: (i) that neither wife's proposed purchase of husband's interest in the parties' WAEL real estate and business, nor her forfeiture of the $95,000 down payment for the purchase, was conditioned upon her ability to obtain financing for the purchase; and (ii) that she therefore forfeited the down payment to husband when she failed to purchase the property, even though she was unable to obtain financing for the purchase.

The PSA, as recited in the final divorce decree, expressly provided that wife's purchase of the WAEL related property was "subject to" her ability to obtain financing for the purchase. The term "'subject to' means 'subordinate, subservient, inferior, obedient to; governed or affected by.'" Donnelly v. Donatelli & Klein, Inc., 258 Va. 171, 181, 519 S.E.2d 133, 138 (1999) (quoting Black's Law Dictionary 1425 (6th ed. 1990)). This term in the PSA thus created a condition precedent to wife's obligation to purchase the property, which would thereby relieve her of that obligation upon her inability to obtain financing. See Vega v. Chattan Assocs., 246 Va. 196, 197-99, 435 S.E.2d 142, 143-44 (1993) (purchaser's "obtaining of financing" under terms of real estate purchase contract was condition precedent). As this Court recently explained, "'[a] condition precedent [calls] for the performance of some act, or the happening of some event after the terms of the contract have been agreed upon, before the contract shall take effect.'" de la Rosa Herrera v. Martin, 49 Va. App. 469, 476, 642 S.E.2d 309, 312 (2007) (quoting Morotock Ins. Co. v. Fostoria Novelty Co., 94 Va. 361, 365, 26 S.E. 850, 851 (1897)); see Smith v. McGregor, 237 Va. 66, 376 S.E.2d 60 (1989) (holding that an agreement is inoperable until all conditions precedent are performed); see also, e.g., Goldberg v. Anastasi, 321 A.2d 155, 157 (Md. 1974) (holding that "the [purchasers' obtainment] of a mortgage

commitment which would enable the purchasers to make settlement within 60 days was a condition precedent which had to be met before the purchaser could be required to perform"); Khabbaz v. Swartz, 319 N.W.2d 279, 284 (Iowa 1982) ("If an offer to buy and sell real estate is conditioned upon the purchaser obtaining a loan, failure to obtain the loan renders the contract null and void."); see generally H. C. Lind, Annotation, Vendor and purchaser: contract provision referring to purchaser's uncompleted arrangement for financing balance of purchase price as creating condition precedent, 81 A.L.R.2d 1338 (2008).

The PSA also provided that wife's $95,000 deposit for the purchase of the property would be forfeited "[s]hould the [w]ife not close on the transaction *as specifically set forth herein*." (Emphasis added.) Thus, the underlying terms of the transaction, as specifically set forth in the final order, were incorporated by reference into the forfeiture provision. As explained above, those terms included the condition precedent that wife be able to obtain financing for the purchase of husband's share of the WAEL assets. Accordingly, we conclude that wife's forfeiture of the $95,000 deposit was likewise conditioned upon her ability to obtain financing for the purchase. That is to say, reading the PSA "as a whole," Dowling, 270 Va. at 518, 621 S.E.2d at 400, and "constru[ing] [the forfeiture provision] strictly against forfeiture," Davis, 205 Va. at 169, 135 S.E.2d at 814, we construe the provision as incorporating all of the preceding terms of the purchase, which included financing as a "precondition" to the transaction, using the trial court's terminology. To read the forfeiture provision otherwise would amount to allowing husband to select, retrospectively, only those terms of the transaction that he wished to have incorporated into the forfeiture provision—contrary to the language of that provision. "Forfeitures are never favored either at law or in equity, and provisions for a forfeiture are strictly construed against the party for whose benefit they are inserted." Cartos v. Hartford Accident & Indem. Co., 160 Va. 505, 518, 169 S.E. 594, 598 (1933). Wife's failure to purchase

husband's share of the WAEL assets as a result of her inability to obtain financing thus failed to give rise to a forfeiture of the deposit.

For these reasons, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>