COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Humphreys and Friedman
Argued at Lexington, Virginia

ESTATE OF RALPH EAGLE,
 BY MELISSA CUPP, EXECUTOR

                                                                 MEMORANDUM OPINION[*] BY

v.      Record No. 1145-21-3                 JUDGE FRANK K. FRIEDMAN
                                                       SEPTEMBER 27, 2022

BARBARA EAGLE

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Thomas J. Wilson, IV, Judge

Dana J. Cornett for appellant.

Grant D. Penrod (Nicole D. Faut; Hoover Penrod PLC, on brief), for
appellee.

Appellant, the Estate of Ralph Eagle, appeals the circuit court's interpretation of a premarital

agreement between Ralph Eagle and Barbara Eagle. Appellant assigns error to the circuit court's

finding that two savings certificates, and any money derived from them, were joint property under

the terms of the agreement. Appellant also asserts the circuit court improperly divided the couples'

property under equitable distribution concepts rather than by the terms of the agreement. For the

following reasons, we affirm.

## BACKGROUND

We view the evidence, and reasonable inferences fairly deducible therefrom, in the light

most favorable to Barbara, the prevailing party before the circuit court. *See, e.g.*, *Anderson v.

Anderson*, 29 Va. App. 673, 678 (1999).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The Premarital Agreement

The parties were married in 1997. Prior to their marriage, Ralph and Barbara entered into a premarital agreement (the "Agreement"). At the time of their marriage, Ralph had significantly more financial means than Barbara. His attorney drafted the document, and Barbara signed it the day she first saw it. The couple married three days later. The couple sought a divorce in 2019 under the terms of their Agreement.

The parties waived spousal support and other rights in the Agreement, and agreed to terms governing their property. The Agreement sought to explain which property holdings would be "separate" property, free from any form of marital property designation—and which would be joint and shared. The parties agreed on the following definitions in classifying their existing and future property:

"Current Property" is defined:

> Except as otherwise set forth in this agreement, all property—real, personal, and mixed—which each party has previously acquired and now holds in his or her name or possession shall be the separate property of that person, along with all future appreciation, increases, and other changes in the value of that property and irrespective of any contributions either party might have made or may hereafter make to the property or the marriage, directly or indirectly. Any property—real, personal, and mixed—acquired with the proceeds from any sale, trade, transfer or other disposition of separate property as defined here, shall also be separate property for purposes of this agreement.

"Future property" is defined:

> Except as otherwise set forth in this agreement, all property—real, personal, and mixed—which each party may hereafter acquire in his or her name or possession shall remain the separate property of that person, along with all future appreciation, increases, and other changes in value of that property and irrespective of any contributions either party might have made or may hereafter make to the property or the marriage, directly or indirectly. Any property—real, personal, or mixed—acquired with the proceeds

from any sale, trade, transfer, or other disposition of separate property as defined here, shall also be separate property for purposes of this agreement.

"Joint property" is defined:

Any property—real, personal, or mixed—which shall now or hereafter be held in the joint names of the parties shall be owned in accordance with the title of joint ownership, and barring any other designation, shall be presumed to be held equally by the parties with survivorship rights (if any) as may be specifically designated by the title ownership or implied or derived by operation of law other than [through marital community property].

For purposes of this appeal, it is significant that the language of the Agreement allows any property that was separately acquired to remain separate property, including any proceeds accrued on the separate property. The joint property definition provides that "any property . . . which shall now or be held in the joint names of the parties shall be owned in accordance with the title of joint ownership" and "shall be presumed to be held equally."

<u>The Savings Certificates, Earned Interest and Marital Discord</u>

Prior to the marriage, Ralph owned two savings certificates in his own name. In 2010, during their marriage, Ralph renewed the savings certificates—a process of cashing out the certificates and repurchasing them. He renewed the certificates in the names "Ralph N. Eagle or Barbara A. Eagle WROS." Ralph testified he set it up that way because he "figured if [he] ever needed to get some money to do something with, [he] didn't have to go ask her if [he] could do it [he] would've just done it [himself]." He also added her name to the certificates "[s]o she would have some money to use it in case I passed away and wouldn't have to go through a bunch of hoops to try to get it. It would be available, readily available."

During the marriage, Ralph contributed rental income generated from the lease of certain real estate, draws from his business' partnership account, and his social security payment to a joint banking account from which marital expenses were paid. Conversely, Barbara set up an

- 3 -

account in her sole name into which she deposited all of her separate funds, and later added her adult son's name. Disagreements over spending habits and Barbara's refusal to contribute to the couple's joint account, over time, led to marital discord.

As the marriage deteriorated, Ralph cashed out the two $50,000 savings certificates, renewed them in his own name, and deposited the earned interest money, about $25,000, into a newly opened bank account in his sole name. This occurred in June 2019. Ralph stopped contributing funds to the couple's joint account in July 2019. Barbara found out that the savings certificates were cashed out at the bank after their separation—Ralph did not discuss it with her. The parties separated in November 2019.

Divorce Hearing and Final Decree

Both parties acknowledged that the Agreement controlled the property distribution during the circuit court hearing regarding division of property. Barbara asked for one of the two savings certificates to be awarded to her, along with half the value of the interest derived from the saving certificates (her half being $12,882.99).[1] Barbara argued that the savings certificates were joint because they were retitled to include her name during the marriage, thus transforming them, and the interest earned on them, from Ralph's separate property into their joint property.

Ralph argued that the savings certificates were not joint because he had titled them with an "or" between their names. He further argued that the certificates reverted to his separate property when he renewed them in his name alone, and the classification of property should be calculated based on its status at the time of the couple's separation, as the Agreement did not specify when the determination of property would be made.

---

[1] She also sought and received a vehicle and modest additional funds not disputed on appeal.

The circuit court noted that the "Joint Property" clause of the Agreement was the crux of the dispute and analyzed the plain meaning of the contractual language. It found that the certificates, once jointly titled, were owned jointly in accordance with the Agreement. The Court's final decree ordered Ralph to transfer one of the certificates to Barbara. It also ordered Ralph to pay Barbara half of the accrued interest on the certificates.

This appeal followed.[2] The circuit court's holding that the savings certificates were jointly owned and that the proceeds from cashing them in were jointly owned are the only issues disputed on appeal.

ANALYSIS

A. Rules of Construction for Interpreting Premarital Agreements

We review the trial court's interpretation of a contract *de novo*. *Dowling v. Rowan*, 270 Va. 510, 516 (2005). Premarital agreements are contracts subject to the rules of construction of contracts generally. *Smith v. Smith*, 43 Va. App. 279, 286 (2004). Thus, we follow the rule of applying the "plain meaning of unambiguous contract terms." *Id.* at 286-87. We "consider the words of the contract within the four corners of the instrument itself." *Dowling*, 270 Va. at 516. In interpreting and enforcing a contract "it is the duty of the court to construe a contract as written." *Wilson v. Holyfield*, 227 Va. 184, 187 (1984). The court "cannot read into contracts language which will add to or take away from the meaning of the words already contained therein." *Id.* (citing *Virginian Ry. Co. v. Avis*, 124 Va. 711, 719 (1919)). "The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." *Id.* (quoting *Meade v. Wallen*, 226 Va. 465, 467 (1984)). "Moreover, what the

---

[2] Ralph Eagle appealed the final decree on October 26, 2021; he died on December 9, 2021. This Court subsequently granted a motion to substitute the Estate of Ralph Eagle in Ralph's stead.

parties claim they might have said, or should have said, cannot alter what they actually said." *Id.* at 188.

### B. The Savings Certificates and Their Proceeds Became Joint Property When the Certificates Were Titled in Both Names[3]

In the first assignment of error, appellant argues that the savings certificates, and their proceeds, were always Ralph's separate property, even when Barbara's name was added to the renewed certificates in 2010. Appellant points to inclusion of the word "or" between Ralph and Barbara's names on the savings certificates, suggesting that this disjunctive modifier kept the certificates from becoming "joint property."

Appellant relies heavily upon *Rowe v. Rowe*, 24 Va. App. 123 (1997), to support the claim that the certificates remained his separate property despite being titled in both parties' names. In *Rowe,* this Court analyzed whether the husband intended to gift his wife the proceeds from his separate residence, which were used to buy the couple's new marital residence. *Id.* at 136-38. This Court ruled in *Rowe* that jointly titling the home alone was not sufficient proof of a gift but, by looking at other circumstances, such as the husband's lack of reservations on the transfer of title, the Court concluded that a gift was made. Appellant suggests here that by using "or" in the renewal of the certificates—"Ralph N. Eagle or Barbara A. Eagle WROS"—Ralph put a reservation on the transfer. Appellant asserts this distinguishes this case from *Rowe*, in which the court noted the property was a gift because the husband did not place any reservations on the transfers of title.

---

[3] Appellant challenges whether the savings certificates and "proceeds" from cashing them in were jointly owned. Appellant's argument does not specify whether the interest earned on the certificates is considered "proceeds," or whether this refers simply to the cash value of the certificates themselves. For purposes of this opinion, we consider the interest as part of the proceeds addressed under this assignment of error.

Appellant's reliance on *Rowe*, however, is misplaced—it was an equitable distribution decision guided by Code § 20-107.3, which required the court to trace the parties' contributed property and determine whether the proceeds were a gift when used to buy the new house. *Id.* at 135-37. That question in turn depended on whether the husband had a donative intent in contributing his separate property. Unlike *Rowe*, the classification of property here is controlled by the parties' agreement, which does not rely on the statutory equitable distribution framework and, in particular, does not turn on the presence or absence of Ralph's donative intent.

Here, we analyze the intention of the parties "as expressed by them in the words they have used." *Wilson*, 227 Va. at 187 (quoting *Meade v. Wallen*, 226 Va. 465, 467 (1984)).[4] The Agreement dictates that property "held in the joint names of the parties" is to be "owned in accordance with the title of joint ownership" and "shall be presumed to be held equally by the parties with survivorship rights . . . ." By the plain meaning of the language of the Agreement, the certificates were jointly held when they were renewed in the joint names of the parties in 2010, as designated by title ownership. The designation "WROS" in the renewal further establishes the right of survivorship between the parties.[5] Ralph's use of the disjunctive "or," does not change the fact that, after the title was put in both names, Barbara could have accessed the savings certificates any time she wanted, as Ralph ultimately did. The re-titling gave Barbara

---

[4] Appellant asserts that the contract is unambiguous, and Barbara observes that, even if it were not unambiguous, it was drafted entirely by Ralph and should be construed against him. *Martin & Martin v. Bradley Enters*, 256 Va. 288, 291 (1998); *Mahoney v. NationsBank of Virginia, N.A.*, 249 Va. 216, 222 (1995). We agree the terms are not ambiguous. "When the contract is unambiguous, extrinsic evidence of prior or contemporary discussions, understandings, or agreements, is inadmissible 'to contradict or vary the plain language of the instrument itself.'" *Worsham v. Worsham*, 74 Va. App. 151, 165-66 (2022) (quoting *Utsch v. Utsch*, 266 Va. 124, 130 (2003)).

[5] WROS is an acronym used in place of "with right of survivorship." *See* John F. Kuether, *Significant Probate and Trust Decisions*, 31 Real Prop. & Tr. J. 129, 195 (1996) (providing the meaning of WROS).

unrestricted access to the certificates in the event of Ralph's death—which, in fact, was a motivating factor in Ralph's decision to add her name to them.

Under the terms of the Agreement, the certificates became joint when Ralph added Barbara's name to them, giving her equivalent ownership in and access to the certificates. Under the joint property clause, any property held jointly at the time the Agreement was signed, or "hereafter," would be "owned in accordance with the title of joint ownership." Thus, the certificates became joint property when renewed in both names in 2010. The proceeds from the certificates which Ralph received when he cashed in the certificates in 2019 were also joint property. Once joint, the property is "presumed to be held equally by the parties" under the joint property provision. The circuit court did not err in concluding that Barbara was entitled to half of the certificates and their proceeds.

C. The Certificates Did Not Revert Back to Separate Property When Ralph Renewed Them in His Sole Name

In the second assignment of error, appellant suggests that even if the certificates became joint property when Ralph added Barbara's name, the certificates reverted to separate property when Ralph renewed them in his name only as the marriage deteriorated. Appellant further argues that the circuit court should have classified the property only on the date "the marriage ended," at which point the certificates were titled back in Ralph's sole name.

The intent to prevent such a reversion is apparent from the language of the Agreement. The "Current Property" and "Future Property" clauses provided that property in the name of either party would remain separate except as "otherwise set forth in this agreement." This separate status could be altered specifically under the joint property clause via jointly titling the property. The Agreement defined joint property as that held "now or hereafter" in "*the joint names* of the parties." Notably, the "Current Property" and "Future Property" definitions each acknowledged their provisions could be altered by other terms in the Agreement; the joint

- 8 -

property provision did not contain a similar exception. Instead, the provision stated that any property titled jointly "now or hereafter" "shall be owned in accordance with the title of joint ownership." The Agreement certainly did not contain any terms that would permit one party to unilaterally commandeer sole ownership of "Joint Property."

This reading finds some additional support in the text of the Agreement, which classifies as separate any property that one party "acquire[s]" in his or her name or possession but classifies as joint any property that is "held" jointly. This reading also accords with common sense; an arrangement in which either party could unilaterally convert joint property to his or her own separate property at any time seems likely to invite mischief.[6]

Appellant suggests that the "Current Property" and "Future Property" provisions permit "tracing" because of the language in each that allows separate property to accrue value such that the separate owner keeps "all future appreciation, increases, and other changes in the value of that property and irrespective of any contributions either party might have made or may hereafter make to the property or the marriage." Appellant argues that "Joint Property" is missing such a provision, and so the omission should be interpreted to mean that a disposition of "Joint Property" does not remain joint, but reverts to separate status upon re-titling. We disagree. The "accrual" provisions allow the separate owner to retain and identify accrued proceeds from separate property, but the "Joint Property" clause does not contain such a provision because once property became joint, tracing each separate contribution was no longer necessary. The Agreement states that once property is placed in both names, it "shall be owned in accordance

---

[6] The Agreement did indicate that joint property maintained its status "barring any other designation"; thus, Ralph and Barbara, together, could have contracted to let the property revert to Ralph's separate property (for example, in return for transferring a vehicle or other personal property to Barbara). But once the property was jointly held, neither the Agreement nor any precedent raised by Ralph authorized him to unilaterally change its status to his separate property without involving the other joint owner.

with the title of joint ownership" and "shall be presumed to be held equally by the parties." "Tracing" concepts under equitable distribution were removed from the equation by contract, and Ralph could not unravel his decision to place the certificates in joint names by attempting to trace his "separate" contribution.

We conclude that under the terms of the Agreement, the certificates became joint when Ralph added Barbara's name to them and remained so, even considering Ralph's unilateral attempt to revert them to his separate property.[7]

D. The Circuit Court Did Not Divide the Property by Equitable Distribution, but Rather by the Terms of the Separation Agreement

Appellant's final assignment of error asserts that the circuit court abused its discretion by making an error of law when it "applied equitable distribution" principles to this dispute. The circuit court's interpretation of the equitable distribution statute is reviewed *de novo*. *Sobol v. Sobol*, 74 Va. App. 252, 272-85 (2022).

Contrary to appellant's contention, the circuit court, through its final decree, made clear that the parties' property was not divided under an equitable distribution theory. *See Walton v. Commonwealth*, 256 Va. 85, 94 (1998) ("[A] trial court speaks only through its orders."). The court's final decree incorporated a letter opinion, which expressed "it is important to note this case is not an equitable distribution case," and explicitly detailed that the parties contracted

---

[7] Appellant's second assignment of error challenges only the finding that the certificates themselves were not jointly held at the time of separation or divorce; it does not address "proceeds" or "interest" earned from the savings certificates. However, appellant's argument under this assignment included an assertion that the earned interest was not joint property because it was not "titled in wife's name" on the date of the parties' separation. Presumably, this refers to the fact that Ralph deposited the earned interest into a bank account titled in his own name. Even assuming that the issue of interest was properly before us under this assignment, this argument relies on the premise that the certificates themselves were not joint; for the same reasons, this argument fails. Similarly, we need not reach Ralph's claim that the circuit court should have determined whether the certificates were joint or separate property as of the time of separation. The certificates and proceeds remained jointly held from 2010 forward.

around the law of equitable distribution.  The reasoning provided in the four-page letter opinion construed the premarital agreement—it did not rely on the equitable distribution statute.[8]  The circuit court's understanding of the governing Agreement was clearly stated on the record multiple times throughout the hearing.

The circuit court made its decision guided by the Agreement, not by a misapplication of the equitable distribution statute.  Appellant's protests to the contrary are not supported by the record.  The circuit court did not err in its application of the law.

CONCLUSION

The parties' Agreement controls this decision—such is the purpose of a premarital agreement.  We cannot find that the certificates and their proceeds remained, or reverted to, Ralph's separate property where such an inference is contrary to the intent of the parties as expressed in the language of the Agreement.  We therefore find no error in the circuit court's ruling and affirm the circuit court's final decree.

*Affirmed.*

---

[8] Though appellant does not raise this directly, the circuit court attached some calculations to the letter opinion, and one of these pages was titled "equitable distribution calculation."  Though the title is misleading, it was clearly in error as the court explained in its letter opinion "[a] spread sheet attached hereto indicates that Husband will pay to Wife the sum of $24,581.54 to bring about the anticipated equal division of joint property."  The court did not divide the couples' marital property under equitable distribution, but rather equally divided joint property consistent with the terms of the Agreement. *See Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977) (Appellate courts "will not fix upon isolated statements taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied.").